IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>    v.<br><br>CHARLES DAVID WOOD, JR.; AMS STAFF LEASING, INC., d/b/a/ AMS Staff Leasing Corporation; BRECKENRIDGE ENTERPRISES, INC., d/b/a/ AMS Staff Leasing II; AMS Staff Leasing II, Inc.; HIGHPOINT RISK SERVICES, LLC; and ASPEN ADMINISTRATORS, INC.,<br><br>       Defendants. | C/A No. 3:14-cv-03719-CMC<br><br><br><br><br>OPINION AND ORDER<br>ON ACTUARIAL REPORT |

This matter is before the court for review of the actuarial report of Matthew P. Merlino, F.C.A.S., M.A.A.A. ("Merlino"). This report ("Merlino Report") addresses the amount of collateral needed to be maintained, as of April 30, 2017, to cover potential below-deductible liabilities that may arise on policies issued to AMS Staff Leasing, Inc., Breckenridge Enterprises, Inc., and/or AMS Staff Leasing II, Inc., pursuant to the 2006 Coverage Agreement (the "AMS Policies"). For reasons explained below, the court adopts the Merlino Report in full and finds the Total Reserves needed for AMS Policies subject to a $1,000,000 deductible limit was $9,519,603 as of April 30, 2017.

This figure shall be used in conjunction with the report of the court-appointed accounting expert, Stephen Wolf, C.P.A. ("Wolf"), to determine whether the collateral account required under the agreement between the parties is underfunded or overfunded. Pursuant to the parties' prior agreement as adopted and ordered by the court, additional funds shall be added or excess funds shall be refunded based on the result of the combined reports. The adequacy of the account shall

continue to be reviewed on a quarterly basis and similar adjustments shall be made based on the result of the quarterly reports.

## BACKGROUND

The court has described the factual context of this case in several prior orders. *See*, *e.g.*, ECF No. 258 (summary judgment order); ECF No. 414 (order on non-jury issues). In summary, Companion Property and Casualty Insurance Company ("Companion") and AMS Staff Leasing, Breckenridge Enterprises, and AMS Staff Leasing II (collectively "AMS"), as well as other entities, are parties to the 2006 Coverage Agreement. That agreement established a relationship through which Companion provided certain forms of insurance to AMS, including workers' compensation insurance for AMS employees. The insurance provided is governed by separate policies.

Due to the nature of the relationship (described by the parties as a "fronting" arrangement), the 2006 Coverage Agreement and other related agreements provided Companion a variety of protections against risk of loss. One of those protections is described in the following paragraph of the 2006 Coverage Agreement:

> **13. Claims Collateral.** During the Coverage Term of the Master Policies, CPCIC [*i.e.*, Companion] shall establish and maintain in its name with the Bank of America an account to serve as a claims reserve fund (the "Claims Reserve Fund"). At the commencement of the Coverage Term the AMS Entities shall make an initial deposit of $1,000,000 into the Claims Reserve Fund as the initial "Required Reserve". Thereafter, on a quarterly basis, the Milliman consulting firm ("Milliman") shall audit the claims experience in connection with the Policies and determine the appropriate amount of the Required Reserve for the next quarter in accordance with a methodology acceptable to CPCIC in its sole discretion. As actual claims are incurred the AMS Entities shall deposit into the Claims Reserve Fund the amount of such claims on a monthly basis by the 10th day of the calendar month so that the Required Reserve is maintained in the Claims Reserve Fund at all times. CPCIC shall have the right at any time during normal business hours to audit the records of any AMS Entity with respect to claims and the Claims Reserve Fund. All earnings on the Claims Reserve Fund shall belong to CPCIC and no AMS

Entity shall have any interests therein. DN [*i.e.*, Dallas National] will be responsible for scheduling and paying for the Milliman audits on a quarterly basis and providing CPCIC copies of these reserve reports within 45 days of the close of the quarter. All earnings on funds held within the Claims Reserve Fund will inure to the benefit of CPCIC.

2006 Coverage Agreement ¶ 13 (Dkt. No. 340-1).

One disputed issue in this litigation is whether the collateral in the account addressed in paragraph 13 of the 2006 Coverage Agreement is properly funded. Several of Companion's claims either directly or indirectly assert the account is underfunded. *See* ECF No. 88 (Second Am. Compl.) at First Cause of Action ("Declaratory Relief—Collateral"), Third Cause of Action ("Breach of Contract—Failure to Pay Deductible"), Fourth Cause of Action ("Breach of Contract—Failure to Comply with Audit"). Defendants in contrast, assert several counterclaims directly or indirectly alleging the account is overfunded. *See* ECF No. 90 (First Am. Ans. & Countercls.) at First Counterclaim ("Breach of Contract—Collateral"), Second Counterclaim ("Breach of Special Relationship"), Third Counterclaim ("Conversion").

**PROCEDURAL HISTORY**

Just prior to the scheduled jury trial, the parties entered a Joint Stipulation delineating four categories of issue: (1) issues requiring pre-trial resolution (including motions in limine); (2) issues for trial by jury; (3) issues for non-jury resolution to be resolved after the jury trial with issuance of "declaratory judgments as needed"; and (4) "Issues for Independent Accountant/Actuarial Review."[1] ECF No. 409-1. The Joint Stipulation provided as follows regarding the actuarial review:

---

[1] The issues for jury trial were resolved by settlement before the scheduled trial. The non-jury issues were resolved by order entered July 20, 2017. ECF No. 414.

A.     An independent actuarial firm agreed to by the parties shall prepare an updated actuarial report as of April 30, 2017, using an actuarial methodology approved by the Court and the independent actuarial firm.  [footnote quoted below] Companion shall furnish audited data to the independent actuarial firm, whenever available, including for any prior years, but shall not be required to audit any data other than in the normal course of its business.  All data provided to the independent actuarial firm shall be simultaneously provided to Defendants.  The report shall state the Required Reserve for below deductible liabilities under the AMS Policies. Thereafter, the same agreed-upon actuarial firm shall prepare quarterly actuarial audit reports using the same methodology and advise the parties and Court of the results of same, including updated Required Reserve.  The parties will abide by the Required Reserve determinations made by the independent actuarial firm.

ECF No. 409-1 at 6.  The footnote to this paragraph read as follows:

> Prior to the preparation of the updated actuarial report, the parties shall have an opportunity to comment on the potential actuarial methodology or methodologies that may be utilized by the independent actuarial firm and notify the Court of any concerns regarding such methodology or methodologies.  Companion notes that it does not expressly or impliedly waive its contractual right to accept or reject a methodology in its sole discretion.

*Id.*

The parties each proposed an actuary to serve in this role, and letters were sent to each proposed actuary regarding the potential appointment.  ECF Nos. 380-1, 380-2.  After reviewing the qualifications of the proposed actuaries, the court appointed Merlino as a neutral expert to conduct the actuarial review.  ECF No. 386 (Order Appointing Actuarial Expert).

The parties supplied Merlino with a set of materials to assist in his review, and they engaged in numerous joint telephone conferences and email correspondence with him. By email to the parties dated June 7, 2017, Merlino proposed the following approach for projecting reserves:

Proposed Approach for Projection of AMS below Deductible Reserves

1.  Review all data for reasonableness and consistency.  Request explanation for any inconsistencies or unusual data points.

2.  Compile historical AMS deductible layer data (multiple data components) in actuarial development triangle formats.  Note that based on the claim data

provided to date there is little reserve exposure remaining for claims with deductibles at or below 75k, these claims will likely be segmented and addressed separately from those claims subject to the $1,000,000 deductible. Also, the 19 claims identified in the instructions will be segmented and addressed separately. (Note: Exclusion of any other claims will be based on additional instructions from the court.)

3. Compile Florida Industry and Other Industry Development to supplement actual development. (Source: Rate Filings or latest Annual Statistical Bulletin). Adjust unlimited patterns to a limited basis.) Select emergence patters (loss development patterns) based on review of historical AMS data development in the deductible layer, industry patterns and qualitative information. Interpolate patterns for 4/30/17 projection.

4. Project 4/30/17 ultimate loss and [ALAE] at the below deductible levels using the following methodologies:

   a. Paid Development (Given the volume of business, development projections will likely be done on a combined basis for medical, indemnity, and expense.)

   b. Reported Development

   c. BF Method (Only if reasonable a-priori expected loss is identified)

   d. IBNR to Case (reasonability test or projection)

   e. Reserves to Recent Payments (reasonability check or projection)

5. Compile and review various diagnostics to address assumptions underlying various projection methods.

6. Review case reserving approach for sample of open claims.

7. Review various reasonability tests of projections/reserve estimates.

8. Select reserves based on review of projections, diagnostics, case reserving practices and reasonability checks.

Address confidence levels if required by Court using simulations (Models of process variance only).

ECF No. 420-5.

The parties had an opportunity to comment on Merlino's proposed approach. No party

objected. The court approved this proposed approach by Text Order dated June 13, 2017. ECF

No. 403. For ease of reference, the court refers to the steps listed above as the "Approved Approach."

On July 24, 2017, Merlino supplied the parties with a draft preliminary report and solicited their feedback regarding his initial conclusions. ECF No. 420-4. Following his receipt of comments by the parties, Merlino tendered his final report (referred to here as the Merlino Report). ECF No. 420-1. The Merlino Report concludes the Total Reserves needed as of April 30, 2017 are $9,519,603, including both reserves for claims adjusted by Companion and those adjusted by Sedgewick, a third-party claims administrator that took over claims-adjustment responsibility for some policies in 2016. ECF No. 420-1 at Table 3.

Defendants did not object to any aspect of the Merlino Report. Companion objected to Merlino's decision to rely on a methodology that resulted in the $9,519,603 Total Reserves. Companion noted all other methodologies resulted in higher Total Reserves. It argued the methodology ultimately selected differed from the methodologies in the Approved Approach. It also noted its right, under Paragraph 13 of the 2006 Coverage Agreement, to select the actuarial methodology in its sole discretion. ECF No. 420-6.

The court asked Merlino to address Companion's concern as to whether the "methodology" on which he ultimately relied was within the methodologies he proposed and the court approved. ECF No. 424-2. In his response, Merlino explained the Approved Approach included both *projection methods* (item 4 on the Approved Approach) and a *selection process* (item 8 on the Approved Approach). ECF No. 424-3. He further explained "[t]he selection process considers the ultimate losses and reserves implied by the projection methods," but he did not understand the Approved Approach to restrict the "*selection process* . . . to the range of reserves implied by the *projection methods*. Rather, the results of the projection methodologies, as well as other factors,

would be considered when selecting reserves." *Id.* (emphasis added). Merlino explained the factors he considered in the selection process, most critically the few claims remaining open and the "potential development in the deductible layer on these claims." Using examples from the 2006 accident year, he explained why his reasonability checks led him to select a Total Reserve "outside the range of indications" from other methodologies. *Id.*

The parties were allowed an opportunity to comment on Merlino's explanation and to respond to the other side's comments. *See*, *e.g.*, ECF No. 424-6 (email chain addressing Merlino report and response to court's inquiry).[2] The issue is now ripe for the court's review. After fully reviewing all materials submitted by the parties and by Merlino, the court concludes as follows:

1.    The parties agreed to resolve their dispute as to the proper reserves through an independent actuarial review. The "approach" to be followed in conducting the actuarial review was proposed by Merlino and approved by the court *without objection from either party*. In light of Companion's objection, the court's role is to determine whether Merlino followed the Approved Approach.

2.    Merlino capably performed his appointed tasks in a manner that was both consistent with the Approved Approach and reasonable in light of the circumstances presented. The court specifically finds Merlino's explanation of the basis for his selection of the final Total Reserves figure reasonable and appropriate. Critically, the Approved Approach is not limited to application of the listed methodologies (item 4), but requires "review [of] various reasonability tests of projections/reserve estimates" (item 7) and "[s]elect[ion of] reserves based on review of

---

[2]    The parties have been directed to but have not yet filed additional emails commenting on Merlino's Final Report and response to the court's request for additional information. While these emails are not yet filed, they have been fully considered based on the informal submission.

projections, diagnostics, case reserving practices and reasonability checks" (item 8). Merlino appropriately selected reserves based on a consideration of multiple factors including the limited number of open claims remaining within the deductible layer and a year-by-year analysis of such claims. *See* ECF No. 424-3 (Merlino Aug. 30, 2017 email providing example of analysis for 2006 accident year and concluding "the projection methodologies imply a range of reserve[s] that overstates the exposure in the deductible layer").

3. Neither side has objected to Merlino's estimate for exposures associated with Sedgwick-adjusted policies. Therefore, the court accepts Merlino's projected Total Reserves of $2,407,938 for Sedgwick-adjusted claims as of April 30, 2017.

4. The court overrules Companion's objection to Merlino's estimate of exposure relating to Companion-adjusted policies. Therefore, the court accepts Merlino's projected Total Reserves of $7,111,665 for Companion-adjusted claims as of April 30, 2017.

5. The court, therefore, finds the Total Reserves required to cover the below-deductible portions of the AMS Policies as of April 30, 2017, are $9,519,603, as set out in Table 3 of the Merlino Report. ECF No. 419-1 at 10. The court-appointed accountant shall utilize the figures in that table in calculating whether the collateral is underfunded or overfunded.

6. The parties shall continue to supply Merlino with data and information sufficient for him to perform an actuarial analysis to update the Total Reserves on a quarterly basis.

7. Merlino indicated in his final report that he intended "to recommend an expanded review of case reserving in future analyses if allowed to do so by the Court." ECF No. 420-1 at 15. Within two weeks of entry of this order, counsel shall confer with each other (and as they deem appropriate with Merlino) to determine whether to include this expanded review in future analyses.

## CONCLUSION

For the reasons above, the court adopts the Merlino Report in full and directs the Total Reserves set forth in Table 3 of that report be used in determining whether the collateral is underfunded or overfunded.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
September 7, 2017